IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 08–14–BLG–SPW–1 |
| Plaintiff, | |
| vs. | ORDER |
| CAMILLE ADAMS, | |
| Defendant. | |

On April 13, 2023, Defendant Camille Adams filed a motion to reduce his 499-month robbery sentence under 18 U.S.C. § 3582(c)(1)(A). (Doc. 178; *see* Doc. 70 (Judg.).) His projected release date is November 1, 2046. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed July 12, 2023). The government opposes immediate release but agrees that a partial sentence reduction may be warranted in light of a nonretroactive change in the sentencing provisions of 18 U.S.C. § 924(c). (Doc. 184.) For the reasons stated below, Adams's motion is granted in part and denied in part.

## ANALYSIS

The First Step Act gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons and the reduction: (1) is consistent with the applicable policy statements of

1

the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). Because the Sentencing Guidelines have not been updated since the First Step Act was passed, "the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam). Thus, this Court's decision turns on whether the defendant has presented "extraordinary and compelling" reasons for a reduction and whether that reduction comports with the objectives of § 3553(a). *See Keller*, 2 F.4th at 1284.

Here, Adams received three consecutive sentences totaling 499 months' custody. (Doc. 70 at 2.) He argues that he would not have been subject to the same mandatory minimum consecutive sentences under 18 U.S.C. § 924(c) if sentenced today. While he is ultimately correct that this qualifies as an extraordinary and compelling reason justifying early release, immediate release is not warranted under the § 3553(a) factors. Accordingly, Adams's sentence is reduced to 319 months.

I.   **Exhaustion of Administrative Remedies**

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a

2

failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Adams filed a request for relief with the warden at his facility on April 6, 2023. (*See* Doc. 183-1.) Because there is no evidence that the warden responded, Adams is deemed to have exhausted his administrative remedies under the statute because more than 30 days have passed since his request was made.

## II. Extraordinary and Compelling Reasons

While the First Step Act does not define "extraordinary and compelling reasons," "district courts may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)." *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022).

In January 2008, a nine-count indictment was brought against Adams and two codefendants alleging a Hobbs Act conspiracy. (Doc. 1.) Adams pled guilty to Count 3 (carrying or using a firearm during a crime of violence), Count 4 (Hobbs Act robbery), and Count 5 (carrying or using a firearm during a crime of violence). (Docs. 32, 55.) At sentencing, the Court calculated the advisory guideline range for Count 4 to be 92 to 115 months. (PSR ¶ 85.) Adams ultimately received a high-end guideline sentence of 115 months on this count.

3

(Doc. 70 at 2.)

Adams was also sentenced on the two counts of carrying or using a firearm during a crime of violence, violations of 18 U.S.C. § 924(c). In Count 3, Adams brandished a firearm in furtherance of a robbery. (PSR ¶¶ 9–11.) In Count 5, Adams discharged a firearm in furtherance of a separate robbery. (PSR ¶¶ 12–15.) At the time of sentencing, the applicable law mandated a "stacked" prison term of at least seven years on Count 3 and at least 25 years on Count 5, with those terms running consecutive to each other and to Count 4. *See* 18 U.S.C. §§ 924(c)(1)(A), (C)(i), and (D)(ii) (eff. Oct. 6, 2005); *Deal v. United States*, 508 U.S. 129, 136 (1993). Accordingly, Adams received a total custodial sentence of 499 months (84 months on Count 3, 115 months on Count 4, and 300 months on Count 5). (*See* Doc. 70 at 2.)

In 2018, § 924(c) was amended through the passage of the First Step Act. *See* Pub. L. No. 115-391, tit. IV, § 403, 132 Stat. 5194, 5221–22 (Dec. 21, 2018). The statute now provides that the extended penalties under § 924(c) apply "after a prior conviction" under § 924(c) "has become final." 18 U.S.C. § 924(c)(1)(C) (eff. Dec. 21, 2018). This has become known as the "anti-stacking amendment." When Adams was sentenced, the minimum term he could receive for the two § 924(c) violations to which he pled guilty was thirty-two years. Under the anti-stacking amendment, a person convicted and sentenced today for the same conduct

would face a minimum consecutive sentence of seventeen years—seven for the first violation of § 924(c) (Count 3 – brandishing) and ten for the second (Count 5 – discharging). Accordingly, Adams's sentence is at least fifteen years longer than the current mandatory sentence for the same offenses.

Moreover, at the time Adams was sentenced, district courts were generally prohibited from considering mandatory consecutive sentences when determining the appropriate sentence for other counts of conviction. *See United States v. Working*, 287 F.3d 801, 807 (9th Cir. 2002). However, the Supreme Court rejected that approach in 2017, holding that "nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." *Dean v. United States*, 581 U.S. 62, 69 (2017). Thus, if sentenced today, the Court could reduce Adams's sentence under Count 4 in light of the substantial amount of additional time he was required to serve under Counts 3 and 5.

Finally, under the framework established by *Chen*, the nonretroactive change in sentencing law must also be considered "in combination with other factors particular to the individual defendant." 48 F.4th at 1098. Adams has identified ongoing mental health challenges, including his diagnoses for post-traumatic stress disorder, anti-social disorder, and borderline personality disorder. (*See* Doc. 183 at

5

11; Doc. 185-1 (medical records).) He has attempted suicide and his brother, who was at one time his cellmate, did commit suicide. (Doc. 183 at 11.) In light of Adams's specific circumstances and the retroactive changes in sentencing law identified above,[1] extraordinary and compelling circumstances warrant early release.

### III. Section 3553(a) Factors

Even so, any reduction must also comport with the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6). Here, these factors support a limited

---

[1] The government mistakenly argues that an additional non-retroactive change in the law is that "[a]t the time Adams was sentenced the guidelines were mandatory." (Doc. 184 at 10.) Not so. The Sentencing Guidelines were deemed advisory in 2005, *see United States v. Booker*, 543 U.S. 220, 259 (2005), and that is recognized in Adams's 2009 sentencing transcript wherein the Court states: "For the record, then, the *advisory* guideline calculations are as follows[,]" (Doc. 165 at 4).

6

sentence reduction to account for the post-sentencing changes to the mandatory minimums under § 924(c), but not immediate release.

In October 2007, Adams was involved in a spree of armed robberies across Montana, Wyoming, and South Dakota. (*See* PSR ¶¶ 9–23.) As described by the government, Adams' "criminal conduct began with a stolen truck and jail break in Helena, Montana on October 8, 2007" and "ended with a manhunt in Chadron, Nebraska three days later. In between, Adams orchestrated a three-state crime spree committing armed robberies at a grocery store in Butte, a gas station in Columbus, a convenience store in Wyoming, and a casino in South Dakota." (Doc. 184 at 13.) At the Thriftway robbery in Butte, Adams pointed a handgun at the clerk, demanded money, forced the clerk to his knees, pointed a gun at the back of the man's head, and "clicked" the gun. (PSR ¶¶ 9–10.) At the Town Pump robbery in Columbus, Adams pointed his gun at the clerk, told her it was robbery, and fired one round into the ceiling over her head and one round into the floor by the counter. (PSR ¶¶ 12, 14.) At the Holiday robbery in Sheridan, Wyoming, Adams fired his gun when the clerk did not move fast enough. (PSR ¶ 18.) Although only 21 years old at the time, Adams had already accrued a significant criminal history, including a previous robbery of a casino, felony escape, and misdemeanor assault of a correctional officer. (*See* PSR ¶¶ 50–52.) With a total offense level of 24 and a criminal history category of V, the applicable Guideline

range for Count 4 was calculated to be 92 to 115 months. (*See* Doc. 165 at 6.) Adams received a high-end Guideline sentence of 115 months, to be followed by the mandatory consecutive terms of 84 months and 300 months under § 924(c). (Doc. 70 at 2.)

To date, Adams has served approximately 13.5 years—or 32 percent—of his total sentence. (*See* Doc. 185-3 at 2.) As described by the government, "Adams' disciplinary record in prison is appalling." (Doc. 184 at 17.) He has accumulated 38 violations since 2009, most of which caused him to lose good time credit and many of which involved violence or weapons. (*See* Doc. 185-2.) On April 15, 2019, for example, Adams was disciplined for assaulting another inmate who required lifesaving outside medical treatment. (*Id.* at 1.) And one day after his suspension for that conduct ran, Adams possessed a dangerous weapon. (*Id.*) While an inmate's disciplinary record is not necessarily indicative of his or her rehabilitative efforts, especially given the length of Adams's prison term, his record shows a concerning level of violence. Considered in conjunction with his underlying conduct and criminal history, a high-end Guideline sentence remains warranted under § 3553(a).

Nevertheless, the passage of the First Step Act shows that Congress believes that there is something unfair or inapt about imposing dramatically longer sentences on defendants who are convicted of multiple § 924(c) counts in a single

8

proceeding. Adams did not benefit from these amendments. And these nonretroactive changes in sentencing law created an unwarranted disparity between Adams and other offenders who have committed similar and even more serious offenses but will face mandatory minimum consecutive sentences of five or ten years rather than thirty. Thus, it is appropriate to reduce his sentence to the current mandatory minimums under § 924(c).

But it is not appropriate to reduce Adams's § 924(c) sentences below the post-First Step Act mandatory minimums. Unlike other § 924(c) stacking cases, Adams's sentence did not stem from him possessing multiple firearms during a single drug trafficking conspiracy or from possessing a single firearm in conjunction with his codefendants. *Compare with United States v. Garcia*, CR 04-87-BLG-SPW, Doc. 981 (Dec. 13, 2022), *and United States v. Duval*, CR 01–62–BLG–SPW, Doc. 265 (Dec. 9, 2022). Rather, Adams brandished and discharged a firearm in numerous robberies, the very type of conduct § 924(c) is meant to address. Contrary to Adams's argument, there is no basis in this record to go below the post-First Step Act minimums. *See United States v. Hamilton*, 2023 WL 183671, at *6 (D. Ariz. Jan. 13, 2023) ("Another way to frame the analysis of this issue is that the 'extraordinary and compelling reason' for reducing Defendant's sentence to avoid unwarranted discrepancies with post-FSA sentences extends no further than reduction to the sentence Defendant would have received had he been

sentenced post-FSA."). Any further reduction would lead to sentencing disparity under § 924(c), denigrate the seriousness of Adams's crimes, and undermine respect for the law. *See id.*; 18 U.S.C. § 3553(a)(2)(A)–(C).

## CONCLUSION

Accordingly, IT IS ORDERED that the defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 178, 183) is GRANTED in PART and DENIED in PART. Adams's custodial sentence is reduced to a period of 319 months, consisting of 115 months on Count 4, 84 months on Count 3, and 120 months on Count 5, all to run consecutively to each other. Adams's previously imposed terms and conditions of supervised release remain unchanged.

DATED this 12th day of July, 2023.

Susan P. Watters, District Judge
United States District Court